UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MARLA MOORE,<br><br>                Plaintiff,<br><br>    v.<br><br>LOWE'S HOME CENTERS, LLC,<br><br>                Defendant. | CASE NO. 2:14-cv-01459-RJB<br><br>ORDER ON PLAINTIFF'S MOTION FOR SANCTIONS FOR DEFENDANT'S WILLFUL SPOLIATION OF EVIDENCE |

THIS MATTER comes before the Court on Plaintiff Marla Moore's Motion for Sanctions for Defendant's Willful Spoliation of Evidence. Dkt. 81 Also pending before the Court is Plaintiffs' Motion to Seal Certain Exhibits to the Declaration of Scott Blankenship in Support of Plaintiff's Motion for Sanctions. Dkt. 80. The Court has considered the parties' responsive pleadings (Dkts. 93, 115), submitted declarations (Dkts. 82-90, 94-96, 116), and the remainder of the file herein. Plaintiff has requested oral argument, which the Court deems unnecessary.

## BACKGROUND

*a. Alleged workplace incidents and Plaintiff's employment termination.*

This case stems from Plaintiff's allegations of unlawful employment practices by Defendant, who employed Plaintiff from 2002 until her termination on February 21, 2013. The

alleged sequence of events began in 2008, when Plaintiff first became pregnant and allegedly became the target of disparaging remarks from her colleagues. She was allegedly demoted from the position of Administrative Store Manager to Receiving Clerk by Store Manager Kent Chapman, who told Plaintiff that "[she] could have been an [Operations Manager] if [she] hadn't gotten pregnant." *Plaintiff's Ex. L*, Dkt. 82 at 187. Plaintiff reported the 2008 incident in an email on July 3, 2012 to Assistant Human Resources Manager ("AHRM") Melissa Toney, who assured Plaintiff that she would look into the problem. *Id*.

Plaintiff raised other complaints about her allegedly hostile workplace to store management and personnel within Defendant's Human Resources Department. For example, plaintiff reported an October 2011 where she "caught" Assistant Store Manager ("ASM") Jay Wayland "checking her ass out," which made Plaintiff feel humiliated. Dkt. 82, at 49. In response to a complaint by Plaintiff that Clerk Brittany Beaulieu called Plaintiff a "lazy ass" and that ASM Wayland made her comfortable by staring at her, Employee Relations Manager Dante Childress investigated the allegations during September 2012. The investigation report concluded that "there was no evidence of inappropriate conduct" towards Plaintiff. *Plaintiff's Ex. U*, Dkt. 86. Legal Counsel allegedly reviewed the investigation report and "closed" the investigation three days before Plaintiff's termination. *Plaintiff's Ex. V*, Dkt. 87 (2/18/13 5:39pm, Sonya Richburg, "Alter Status- Closed").

Plaintiff emailed Defendant's Human Resources Department and various levels of store management between March 2, 2012 and January 2, 2013 on at least eleven occasions, articulating concerns about, *inter alia*, other employees "gang[ing] up" on her, "glaring and [ASM Wayland's] nonverbal harassment," and criticism of Plaintiff's frequent restroom use during pregnancy. *Plaintiff's Ex. I-R*, Dkt. 82 at 181-201, Dkt. 83. Clerk Beaulieu also emailed

1  HR during March and July of 2012, complaining about Plaintiff causing Clerk Beaulieu to be

2  subjected to a harassing environment, with Defendant failing to intervene: "I get that some of

3  you are so concerned about [Plaintiff] "suing" Lowe's but that does not excuse that no one is

4  taking care of the rest of us." *Plaintiff's Ex. T*, at 3, Dkt. 85. *See Plaintiff's Ex. S*, Dkt. 84.

5  Defendant terminated Plaintiff's employment on February 21, 2013 for allegedly

6  violating Defendant's company policy concerning unauthorized photocopying. *See Plaintiff's Ex.*

7  *AA*, Dkt. 82 at 215; *Plaintiff's Ex. V*, Dkt. 87. Defendant's Legal Counsel was allegedly present

8  for at least one meeting where Plaintiff's termination was discussed. Dkt. 82, at 145, 146. On

9  April 25, 2013, Plaintiff's attorney demanded that Defendant produce Plaintiff's personnel file,

10  an incident that, according to the Court's Order on Defendant's Motion to Compel, formally

11  placed Defendant on notice of potential litigation. Dkt. 70, at 8.

12  *2. Defendant's email retention policy and execution thereof.*

13  Defendant's Records Management Policy states:

14  **LEGAL HOLD NOTICES**

15  A situation may arise that requires the normally scheduled destruction of Records to be
temporarily suspended. This suspension is called a "Legal Hold." When it is reasonably
16  foreseeable that a matter is likely to result or does result in a court action, arbitration or
governmental or other investigation or proceeding, all Records relevant to that matter
17  must be preserved until the matter is resolved. Upon initiation of a Legal Hold, any
notified employee . . . must retain . . . until notified by the Company's Legal Department
18  that the Legal Hold has been released . . .

19  **DEPARTING EMPLOYEES**

20  When an employee departs from their employment in the Company, it is the
responsibility of the departing employee's manager to (i) secure and manage any Records
21  (and/or steward them to a successor) and (ii) preserve and retain any Records in the
possession of the departing employee that are subject to a Legal Hold. Upon notice or
22  determination of an employee's impending separation from the Company, the manager
should instruct the employee not to alter, destroy or delete any Records which are subject
23  to a Legal Hold and, if feasible, identify any such Records for the manager prior to the
employee's departure. Prior to any deletions or recycling of Records, the Legal

24

Department must be notified so that it may confirm that such Records are not related to the subject of any active or reasonably foreseeable litigation or investigation.

*Plaintiff's Ex. CC* at 3, Dkt. 82 at 225-228. *See also*, *Plaintiff's Ex. BB*, Dkt. 82 at 217-223.

According to Defendant, Plaintiff's email account was deleted on March 30, 2013 as part of a nightly-scheduled exchange task. The task deleted employees' accounts automatically on a certain date following their termination unless Defendant intervened, for example, when there was a Legal Hold. *Defendant's Ex. Decl. Cook*, Dkt. 96. Defendant's management and HR employees allegedly had 50MB of storage capacity in their inboxes, requiring employees to regularly clean out their inboxes manually or with automatic settings. *Id*. HR employees, including AHRM Toney, deleted emails from Plaintiff that they acknowledge included emails that Plaintiff has produced in discovery. *Plaintiff's Ex. C*, at 100:19-101:6, Dkt. 82 at 78, 79. AHRM Toney testified that she deleted emails to maintain the functionality of her inbox, due to its small capacity, but that she would save emails when she felt "it was a necessity." *Id*.

## DISCUSSION

### A. Spoliation standard

Courts are vested with a range of implied powers "which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991). Among them, federal courts possess inherent authority to levy sanctions against a party that prejudices an opponent through the destruction or spoliation of relevant evidence. *See Glover v. BIC Corp.,* 6 F.3d 1318, 1329 (9th Cir.1993); *see also Leon v. IDX Systems Corp.,* 2004 WL 5571412, *3 (W.D.Wash.2004). This inherent authority is to be exercised with restraint and discretion to fashion appropriate sanctions for conduct that abuses the judicial process. *Chambers,* 501 U.S. at 44–45.

Spoliation occurs where a party "destroys or alters material evidence or fails to preserve" potential evidence when under a duty to do so. *Apple Inc. v. Samsung Electronic Co., Ltd.*, 888 F.Supp.2d 976, 989 (N.D Cal.2012) ("*Apple II* "), quoting *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir.2001). A duty arises when litigation is pending or reasonably anticipated. *See Leon,* 2004 WL 5571412 at *3. Upon locating a duty to preserve, the court considers the prejudice suffered by the non-spoliator and the level of culpability of the spoliator, including the spoliator's motive or degree of fault. See *Leon v. IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir.2006); *Glover*, 6 F.3d at 1329. Spoliation need not have been willful or in bad faith to warrant the imposition of sanctions. *See Glover*, 6 F.3d at 1329*; In re Napster, Inc. Copyright Litig.*, 462 F.Supp.2d 1060, 1066 (N.D.Cal.2006). Sanctions may include an adverse inference instruction, exclusion of evidence, default, or dismissal. *Id*.

**B. Spoliation analysis**

The parties' briefing focuses on four issues, which are the focus of the undersigned's analysis: (1) Defendant's duty to preserve; (2) whether Defendant acted willfully or in bad faith; (3) prejudice to Plaintiff; and (4) the appropriate sanction. For the reasons discussed below, Defendant did not willfully violate its duty to preserve and Plaintiff suffers only minimal prejudice, so default is not an appropriate sanction.

          1. Defendant's duty to preserve

"Although the Ninth Circuit has not precisely defined when the duty to preserve is triggered, trial courts in this Circuit generally agree that, '[a]s soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action.'" *Apple II*, at 991.

Plaintiff argues that Defendant had at least "some notice" sufficient to trigger its duty to preserve because of the content of Plaintiff's complaints, which she emailed store management and HR using phrases including "harassment," "hostile work environment," and "retaliation." Defendant's duty to preserve was also triggered by emails from Clerk Beaulieu to HR during March and July of 2012, Plaintiff contends. Plaintiff points to Defendant's positions in the pending litigation, where Defendant categorized discovery relating to Plaintiff's termination as "work product" and invoked attorney-client privilege at the deposition of AHRM Toney when asked about Plaintiff's termination. Dkt. 81, at 18-21. Plaintiff's Reply also highlights Defendant's alleged awareness of potential litigation because of rumors that Loss Prevention Manager Jenn Tyson was aware of, as well as the involvement of Defendant's Legal Counsel in the September 2012 sexual harassment investigation and in Plaintiff's termination. Dkt. 115, at 9, 10. *Plaintiff's Ex. NN*, Dkt. 116 at 19.

Defendant leans on the Court's prior finding that "investigation into employee complaints or misconduct" prior to April 25, 2013 "serves a predominantly HR function, especially if the investigation takes place before litigation is anticipated." Dkt. 93, at 16, quoting Dkt. 70, at 8. Defendant argues that the content of Plaintiff's emailed complaints is insufficient to trigger a duty to preserve, because notice of litigation, not mere workplace complaints, is required. Dkt. 93, at 17. Defendant distinguishes Plaintiff's authority and argues that as a matter of policy workplace complaints should not be sufficient notice to trigger a duty to preserve because of the burden on employers. Dkt. 93, at 20, 21. Regarding Clerk Beaulieu's emails, Defendant points to Clerk Beaulieu's deposition testimony, where she admitted that her speculation about litigation was based on Plaintiff's admission that she deliberately uses certain buzz words when communicating with store management to avoid discipline. Dkt. 93, at 23. Finally, concerning

ORDER ON PLAINTIFF'S MOTION FOR
SANCTIONS FOR DEFENDANT'S WILLFUL
SPOLIATION OF EVIDENCE- 6

Legal Counsel's involvement in the September 2012 sexual harassment investigation, Defendant argues that the evidence only shows that Legal Counsel reviewed the internal report, and concerning Legal Counsel's involvement in Plaintiff's termination, Legal Counsel's mere presence should not trigger a duty to preserve. Dkt. 93, at 22, 23.

Based on the parties' submissions, Defendant did not have a duty to preserve Plaintiff's emails prior to their deletion. Most of Plaintiff's emails to HR and management do not raise "potential claims," but rather raise Plaintiff's concerns about workplace gossip and challenging relationships. Where Plaintiff raised a cognizable sexual harassment claim via email, Defendant initiated an internal investigation that concluded Plaintiff's claim was groundless. Plaintiff did not appeal that determination or otherwise indicate her intent to sue Defendant. At best, Plaintiff can point to evidence of low-level employees' general awareness that Plaintiff was rumored to pursue litigation, but "merely because one or two employees contemplate the possibility that a fellow employee might sue does not generally impose a firm-wide duty to preserve." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y.2003).

The Legal Department's review of the September 2012 investigation report only serves to confirm that Plaintiff's claim was found to be groundless and did not trigger a duty to preserve, and the Court has insufficient information about Legal Counsel's involvement in Plaintiff's termination to find that Legal Counsel's presence triggered Defendant's duty to preserve.

Plaintiff's argument that Defendant's duty to preserve arose by effect of Defendant's Records Management Policy is misplaced, because while Plaintiff interprets the policy to require approval by the Legal Department prior to destruction of any records, the policy can be reasonably interpreted to mean that the Legal Department need only be made aware of impending records deletions (e.g.- due to an employee's termination), and that preservation is

1 only required where a Legal Hold is in place. *Plaintiff's Ex. CC* at 3, Dkt. 82 at 225-228.

2 Defendant is the author of the policy, so Defendant's interpretation—which is supported by its

3 own practice—should be given deference.

4     Defendant did not have a duty to preserve Plaintiff's emails.

5         2.  <u>Defendant's willfulness or bad faith</u>

6     Destruction of evidence is willful if "the party had 'some notice that the documents were

7 *potentially* relevant to the litigation before they were destroyed.'" *Leon*, at 959, quoting *United*

8 *States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir.2002).

9     According to Plaintiff, because Defendant admits to willfully destroying emails at a time

10 when Defendant was on notice of potential litigation, Plaintiff destroyed evidence willfully and

11 in bad faith. Dkt. 81, at 24. Plaintiff argues that "three high-level HR managers selected and

12 destroyed [Plaintiff's] emails" that would have been highly relevant evidence for Plaintiff, yet

13 two of them saved complaints from Clerk Beaulieu "to build a defense to a case that they knew"

14 Plaintiff would file. *Id*. Plaintiff also argues that Defendant's attempts to hide its spoliation

15 during the pendency of this case show bad faith, where Defendant deceived Plaintiff about

16 whether it had destroyed Plaintiff's email account, when it anticipated litigation, the content of

17 the compelled documents, and which discovery should be withheld as "privileged" or "work

18 product." *Id*., at 24, 25.  Dkt. 115, at 3-7. Lastly, Plaintiff contends that Defendant acted in bad

19 faith by failing to observe its Record Management Policy, which requires notification to the

20 Legal Department of any foreseeable litigation prior to records destruction. Dkt. 115, at 7, 8.

21     Defendant argues that it did not act in bad faith because no duty to preserve documents

22 attached until April 25, 2013, and Plaintiff's emails were automatically deleted on March 23,

23 2013 as part of regularly-scheduled technology maintenance. Defendant contends that Plaintiff

24

misinterprets Defendant's Record Management Policy, which only requires preservation of documents designated by a Litigation Hold, a policy that Defendant diligently observed. Dkt. 93, at 23-25.

Defendant was not on notice of potential litigation and had no duty to preserve Plaintiff's emails until April 25, 2013, so Defendant did not act in bad faith by deleting Plaintiff's emails, especially where there is no evidence that Defendant deleted them in violation of Defendant's Records Management Policy or its own consistent records practice. *See above*. Plaintiff's argument that HR managers intentionally selectively destroyed Plaintiff's emails and not others for the purpose of "building a case" against Plaintiff is not supported by the record provided. According to Defendant's Information Technology specialist, Defendant's email system limited managerial employees' inboxes to a 50MB capacity, requiring employees to manually delete emails themselves or allow system programs to do the same, which is what AHRM Toney testified occurred with Plaintiff's emails. *Defendant's Decl. Cooke. Plaintiff's Ex. C*, at 100:19-101:6, Dkt. 116. Plaintiff's argument about Defendant's attempts to hide spoliation does not show bad faith, but, at most, reveals Defendant's aggressive litigation strategy. A more transparent exchange of discovery would aid with litigation cohesion and could better comport with Defendant's discovery obligations, but, importantly, Plaintiff has not alleged that Defendant deleted Plaintiff's emails after April 25, 2013.

Defendant did not act willfully or in bad faith in failing to preserve Plaintiff's emails.

### 3. Prejudice to Plaintiff

When evaluating prejudice, courts "loo[k] to whether the spoiling party's action impaired the non-spoiling party's ability to go to trial or threatened to interfere with the rightful decision of the case." *Leon*, at 959.

ORDER ON PLAINTIFF'S MOTION FOR
SANCTIONS FOR DEFENDANT'S WILLFUL

Plaintiff argues that she is prejudiced because Defendant's spoliation undermines her ability to rebut Defendant's pretext for Plaintiff's termination, because Plaintiff allegedly emailed HR about the photocopying practices that were the basis of her termination. Dkt. 81, at 22. According to Plaintiff, she will be required to rely on an "incomplete and spotty" record, namely, the fragments Plaintiff personally preserved, whereas Defendant deleted emails that "likely contain the bulk of evidence relevant to her employment discrimination claims, notably evidence showing the termination was a pretext." Dkt. 81, at 23. Plaintiff's prejudice is severe, she opines, because there is no way of recreating the contents of Plaintiff's email account to substantiate her claims. *Id*.

Defendant argues that Plaintiff need not rely on an incomplete record because Defendant has produced over 5,400 pages of discovery, and at trial Plaintiff can testify about the missing records and can elicit testimony from deposed witnesses to testify about the email content, which Defendant does not dispute. Dkt. 93, at 27-29.

Even if Defendant willfully violated its duty to preserve Plaintiff's emails, Plaintiff suffers only minimal prejudice, if any. Plaintiff produced eleven emails that substantiate much of the factual basis for most of her claims. Plaintiff argues that deleted emails (that Plaintiff cannot produce) would show that Plaintiff's photocopying practice was authorized, undermining Defendant's pretextual termination, but Plaintiff offers no explanation of why other evidence, such as her own testimony, could not also explain the same. And while the Court is certainly not privy to Plaintiff's litigation strategy, emails <u>from</u> <u>Plaintiff</u> to other employees appear to be of minimal relevance to resolving whether <u>Defendant</u> retaliated against or unlawfully terminated Plaintiff.

1    At present, Plaintiff has suffered minimal prejudice, if any. If prejudice becomes more
2 apparent at trial, the Court will timely consider the appropriate remedy.

3          4.  Appropriate sanction

4    According to Plaintiff, any other sanction other than default, such as striking Defendant's
5 defenses or providing an adverse inference instruction, "would not be enough to remedy, [*sic*]
6 Defendant's massive, calculated destruction of evidence." Dkt. 81, at 26. Plaintiff provides no
7 cogent explanation of why default is the only meritorious remedy but appears to justify the
8 extreme sanction by pointing to the extremity of Defendant's actions. Even if the Court reached
9 the issue of an appropriate sanction, which it does not, such a blunt, reactionary sanction, without
10 more careful consideration, should be rejected. Assuming that Defendant willfully violated its
11 duty to preserve, given the minimal showing of prejudice to Plaintiff and the other remedies
12 available, default would not be warranted, because defendant's actions "do not eclipse the
13 possibility of a just result." *In re Napster, Inc. Copyright Litig.*, 462 F.Supp.2d 1060, 1071
14 (N.D.Cal.2006).  Because Plaintiff asks only for the sanction of default, a request the Court
15 denies, other remedies need not be addressed.

16   Plaintiff's Motion for Sanctions for Defendant's Willful Spoliation of Evidence should be
17 denied.

18   **C. Related matters**

19         1.  Legal Hold notice

20   Plaintiff argues that Defendant has failed to produce a "Legal Hold notice" responsive to
21 Plaintiff's discovery request and in violation of the Court's Order. Dkt. 81, at 16. *See* Dkt. 70, at
22 8. The Court's Order stated: "Defendant should provide the relevant policies it operated under at
23 the time it deleted those accounts, specifically, the Records Retention Schedule and Legal Hold,

24

1 as defined in the Records Management Policy (Dkt. 69)." Dkt. 70, at 8 (emphasis added).

2 Defendant's Legal Hold notice is not a policy, so it was not addressed by the prior Order.

3 Nonetheless, the Legal Hold notice, apparently thus far withheld, should be produced as

4 discovery to Plaintiff.

5       2. <u>August 20, 2009 Consent Decree</u>

6 Plaintiff argues that Lowe's violated the August 20, 2009 Consent Decree by Judge

7 Coughenour, which requires Defendant to track harassment complaints, by failing to place copies

8 of Plaintiff's harassment complaints in personnel files of Defendant's employees. Dkt. 81, at 17.

9 Even if Plaintiff is correct, this is simply an evidence issue.

10       3. <u>Motion to Seal Certain Exhibits</u>

11 Plaintiff filed her motion to seal pursuant to the parties' confidentiality agreement,

12 because Defendant stamped Plaintiff's Exhibits J, S, T, U, V, W, and Z as "confidential." Dkt.

13 80. It appears to the Court that these exhibits do not reveal confidential information. Defendant

14 has the burden to make a showing as to why these documents should remain under seal, but

15 Defendant has filed no response. Plaintiff's Motion to Seal should be denied.

16              \* \* \*

17 THEREFORE, it is HEREBY ORDERED:

18 Plaintiff Marla Moore's Motion for Sanctions for Defendant's Willful Spoliation of

19 Evidence (Dkt. 81) is DENIED WITHOUT PREJUDICE.

20 Plaintiff Marla Moore's Motion to Seal Certain Exhibits to the Declaration of Scott

21 Blankenship in Support of Plaintiff's Motion for Sanctions (Dkt. 80) is DENIED.

22 The Clerk is directed to send uncertified copies of this Order to all counsel of record and

23 to any party appearing *pro se* at said party's last known address.

24

1  Dated this 24th day of June, 2016.

2

3  _____

4  ROBERT J. BRYAN
   United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER ON PLAINTIFF'S MOTION FOR
SANCTIONS FOR DEFENDANT'S WILLFUL
SPOLIATION OF EVIDENCE- 13